### 71262. BRIM v. PRUITT.
(342 SE2d 690)

BEASLEY, Judge.

On December 31, 1981, William F. Brim was a passenger in an automobile which was involved in a collision with a vehicle driven by Darlene Pruitt. On December 28, 1983, three days before the statute of limitations expired, Brim filed a lawsuit against Pruitt seeking damages for injuries. Service of process was attempted at the address provided in the complaint. On January 10, appellant learned that the sheriff was having difficulty in locating Pruitt. According to her affidavit, she moved to Texas several months after the collision and was living there at the time suit was filed, unbeknownst to plaintiff. Counsel made extensive efforts to locate her by checking various public records and finally provided the sheriff with an address on January 17. Service was effected the following day, but it was immediately discovered that this identically-named individual was a different one. Pruitt's affidavit states that she moved to Georgia on January 23 but stayed with various friends until she moved into a trailer on February 23.

On February 1, counsel obtained a workers' compensation file on Pruitt and reported to the sheriff the new address obtained from it. Service was attempted for a week before someone was located at the residence. This person informed the sheriff that appellee had recently

sold that residence and moved. The sheriff checked with the postal authorities to obtain a forwarding address and was given 1771 Wortham Road, Douglasville, Georgia. On February 23, coincidentally the same day defendant first obtained a permanent address by moving into the trailer, the sheriff found a Goldie Fields residing at the Wortham Road address. She informed him that she was Pruitt's ex-husband's new mother-in-law, that Pruitt did not reside there although she occasionally came by and left her children there, and that she would be by at some time. As it was the sheriff's only lead on Pruitt, he decided to leave the complaint with Fields. Defendant received those papers and later that day Brim's counsel received a call from appellee who indicated she had received the summons and complaint and was staying with friends in the area. On March 15, appellant's counsel received another call, this time from Pruitt's attorney requesting an extension of time to answer the complaint, and he voluntarily agreed to an extension to April 13.

Prior to filing of the answer, plaintiff's counsel sent interrogatories to Pruitt's counsel seeking her current residence, place of employment, and whether she felt she had been properly served. In answer, Pruitt provided her current address and place of employment, denied that she had been served properly as service upon Goldie Fields was improper because she did not reside with her at that address, and stated that she resided in Paulding County. She filed an answer to the complaint on April 12 asserting lack of valid service, lack of jurisdiction and improper venue among other substantive defenses.

Brim's counsel contacted the sheriff's department in both Douglas and Paulding Counties and each indicated that the address given was in their respective counties. Counsel then requested a second original complaint to be issued by the Clerk of the Douglas County Superior Court. It was received on May 30 and sent to the Paulding County Sheriff's Office with the request that it be served on Pruitt at the address provided in her answer to interrogatories. On June 7 the sheriff's office notified counsel that it was unable to locate appellee's residence. In consequence of what was learned by plaintiff with respect to notice, the residence was thereafter located but no one could be found there. Finally, the sheriff found a Mr. Becker at the residence. The service on Becker at the trailer at which defendant had established her permanent residence on February 23 was effected by the sheriff between 8:30 and 9:00 p.m. on June 25. According to Pruitt's and Becker's affidavits, Pruitt arrived home from a baseball game about midnight. She had lived alone at the trailer since March 1 (apparently she had a child or children with her before that date), but her friend Becker was present in the trailer in her absence and gave the service papers to her promptly.

On May 24, 1984, Pruitt filed a motion to dismiss. While the mo-

tion to dismiss filed on May 24 was pending before the court, the parties obtained from the court by agreement between them, a three-month extension for further discovery, which was proceeding in connection with the merits of the complaint. At a hearing on June 12, 1984, the court requested that the case be submitted and decided upon briefs. No further attempts at service were made, and on January 29, 1985, the court granted Pruitt's motion to dismiss.

Brim appeals, contending that appellee was properly served and that he had exercised due diligence in attempting to serve her.

To give a court personal jurisdiction over a party, valid service of process is required unless it is waived. *Benton v. Modern Fin. &c. Co.*, 244 Ga. 533 (261 SE2d 359) (1979). If service is not made in conformity with OCGA § 9-11-4, any judgment against the defendant is void. *DeJarnette Supply Co. v. F. P. Plaza*, 229 Ga. 625 (193 SE2d 852) (1972). OCGA § 9-11-4 (d) (7) provides that service of process may be had upon an individual by serving "the defendant personally, or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." See *Mahone v. Marshall Furn. Co.*, 142 Ga. App. 242 (235 SE2d 672) (1977). Under OCGA § 9-11-4 (c) service is required to be made within five days although it is not invalid when made later. "Where the statute of limitation accrues between the date of filing and the date of service, whether or not it relates back (if the service is more than five days after the filing) depends on the length of time and the diligence used by the plaintiff." *Bible v. Hughes*, 146 Ga. App. 769, 770 (247 SE2d 584) (1978).

Surely the law is not so blind as to allow the result reached below in this case. The legislature's intention, which cuts across all the myriad of service of process statutes and which is the foundation principle sought to be served by all of them, is due process of law. A precept of the law, wrote Justinian many centuries ago, is to render to every man his due. Institutes of Justinian, No. 533. That includes both parties.

First in the stepping stones to reach that goal of justice is due notice, so that the party whom another seeks to hold liable for injury has a fair opportunity to contest the claim and require the claimant to prove his case before liability for it is assigned. "The purpose of process and service is to bring the defendant into court. [Cits.] The object of service on the defendant is to afford him notice of the pendency of the proceeding and to afford him an opportunity to appear and to be heard. One of the purposes of the Civil Practice Act of 1965 was to minimize those situations in which an action abated on account of the niceties of technical rules of practice and procedure." Id.

at 693. *Tyree v. Jackson*, 226 Ga. 690 (177 SE2d 160) (1970). See also *Jones v. Jones*, 209 Ga. 861, 862 (76 SE2d 801) (1953); *Heffner v. Dutton*, 106 Ga. App. 786, 787 (128 SE2d 337) (1962). To assure this, a variety of procedures has been structured not only to achieve adequate notice but also to secure reasonably acceptable proof that such adequate notice was given. When the notice is challenged, the proof resolves the question. Hence the return of service required of the sheriff or process server, and the proof of newspaper publishing, and so on. Even with such documentation, the fact of adequate notice is not conclusively established, for the defendant may attack the truth or accuracy of the document's statement and the process server's memory. *Hickey v. Merrit*, 128 Ga. App. 764 (197 SE2d 833) (1973). So important is adequate notice regarded.

Here there is no question that defendant received notice of the pendency of the lawsuit. And there is no question that plaintiff doggedly persisted in his efforts to notify her, despite the peripatetic nature of her whereabouts. Yet because she did not receive the complaint a third time, directly from the hand of the sheriff, at her home, the result of the trial court's ruling is that the dispute escapes determination on its merits in a court of law. This leaves an allegedly injured person, who was not even operating the vehicle in which he was injured and who allegedly was severely injured and thus sustained medical expenses and loss of income and pain and suffering, with no relief from the colliding vehicle's driver, who allegedly turned into the path of the oncoming vehicle without warning.

The legislature, in passing the Civil Practice Act, mandated that it be construed "to secure the just, speedy, and inexpensive determination of every action." OCGA § 9-11-1. Because of the significance of due notice, the statutes providing for service of process must be construed with strictness, as this is the method by which the court obtains jurisdiction over the person sued in order to be able to render judgment against him. "[N]otice is the very bedrock of due process." *Thompson v. Lagerquist*, 232 Ga. 75, 76 (205 SE2d 267) (1974). However, substantial compliance with the requisites of the law with respect to issuing and serving of process is sufficient, and where notice is given, no technical or formal objection should invalidate any process. See *Gainesville Feed &c. Co. v. Waters*, 87 Ga. App. 354 (73 SE2d 771) (1952).

Actual knowledge does not dispense with the necessity of service, but the statute prescribing the methods of service is to be liberally construed to effectuate service where actual notice of suit has been received by the defendant. *Trammel v. Nat. Bank of Ga.*, 159 Ga. App. 850 (285 SE2d 590) (1981). See also *Gant v. Gant*, 254 Ga. 239, 241 (2) (327 SE2d 723) (1985). It is the substantial right of the parties which is to be achieved. See OCGA § 9-11-4 (h).

Plaintiff diligently attempted to locate defendant and to serve her. We have chronicled some of the events that transpired from the time suit was filed until the trial court dismissed it. The scene regarding defendant's location was constantly shifting and was not unlike the common state of affairs in today's society where everyone is mobile, residences change frequently for a large portion of the population, and the family unit is often small and variable.

Because plaintiff did not require the sheriff to go out once more to the trailer (or as many times as it took to do so coincidentally with her presence there; she worked) to hand her the papers himself, the lawsuit was dismissed. The ground was insufficient service of process, the meaning of which is that defendant did not have legal notice of the lawsuit.

We hold that the purpose of the statute has been fulfilled. The subsection of the process section of the CPA contemplates that personal service can be on someone other than the defendant himself. OCGA § 9-11-4 (d) (7). The legislature recognizes that notice can be accomplished by giving the papers to someone else even at a place which is a temporary residence of the defendant, so long as it is the usual place of abode. It can also be accomplished on someone who is authorized to receive it by the defendant or by the law. Here the visitor, who was alone in defendant's home with her permission, voluntarily took the papers and shortly thereafter gave them to her, and defendant acknowledged such to the court by immediately acting thereon. Thus there is undisputed evidence that she received actual and prompt possession of the papers with knowledge of their significance. In such circumstances the law should be construed to have been fulfilled. Substantial compliance is all that is necessary.

Where actual notice undisputedly results from service on a person at defendant's residence, to say that it is sufficient for the purposes of subsection (7) is in keeping with the intent of the legislature and the law. Plaintiff has to prove that the service on the person at the residence other than the defendant was "then residing therein" when that is challenged. Such service "counts" even if that person does not give the papers to defendant, sticks them in a drawer, or forgets about them. *Villaruz v. Van Diviere Oil Co.*, 251 Ga. 145 (304 SE2d 58) (1983). If the plaintiff can prove, or the record unquestionably shows, as here, that although the person who accepted the papers was not "then residing therein" but actually gave the papers to defendant, due process would be served more nearly perfectly. Since the law permits the former, as well as other substitutes for personal delivery to the defendant, and upholds judgments even when defendant was in fact unaware, the law surely opens its eyes and recognizes valid service in a case such as this one, particularly where no harm has been claimed or appears. If liberal construction is given to per-

sonal service under Rule 4 (d) (1), as was done in the *Trammel* case, why should it not be given to service under subsection (7) of the same rule? To hold otherwise constitutes a wooden application of the law and a frustration of its purposes. The law is not healthy unless it can meet the needs of men. It is not intelligent unless it can fill the cracks and crevices of real-life situations. It is not just unless it is fair.

*Judgment reversed. Banke, C. J., and Pope, J., concur. Carley and Benham, JJ., concur in judgment only. Deen, P. J., McMurray, P. J., Birdsong, P. J., and Sognier, J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent in this case which can only be described as a lawyer's nightmare come true.

While it is obvious that until April 12, 1984, appellant was diligent in attempting to locate and serve Pruitt, his efforts did not result in valid service of process. He was provided with both her home and work addresses in her answers to his interrogatories which were filed May 1, but did not attempt to serve her at her residence until early June. Even after he was informed by her affidavits supporting the motion to dismiss that Becker did not reside at her address, he made no further attempts at service. There is no evidence that Pruitt was attempting to avoid service, her affidavit states that she was a resident of Texas when the complaint was filed, that she moved to Georgia on January 23, 1984, and that she resided with friends at several different addresses until she moved into a trailer at the address provided in the answers to interrogatories. When she learned of appellant's attempts to serve Goldie Fields, she immediately contacted Brim's attorney and provided her address in the answers to interrogatories. There is absolutely no evidence that she ever waived service.

I believe *Trammel v. Nat. Bank of Ga.*, 159 Ga. App. 850 (285 SE2d 590) (1981), cited by the majority, to be inapplicable in the instant case because that case involved service upon the defendant's twelve-year-old daughter who resided in his household. The issue to be decided was whether a twelve-year-old was "a person of suitable age and discretion" within the meaning of Code Ann. § 81A-104 (d) (7) (presently OCGA § 9-11-4 (d) (7)). I can find no authority which permits service upon a mere visitor at the defendant's residence. Indeed, *Trammel*, supra at 852, states " 'no case can proceed without service upon the defendant in one of the modes prescribed by law, unless service is waived' [Cit.], and " 'the necessity of service is not dispensed with by the mere fact that the defendant may in some way learn or have actual knowledge of the filing of the action.' *Radcliffe v. Boyd Motor Lines*, 129 Ga. App. 725, 731 (201 SE2d 4)."

Accordingly, I would find that the trial court did not err in granting Pruitt's motion and in dismissing the complaint. I am authorized

to state that Presiding Judge McMurray, Presiding Judge Birdsong, and Judge Sognier join in this dissent.

DECIDED FEBRUARY 7, 1986 —
REHEARING DENIED MARCH 19, 1986 — 

*Stephen L. Goldner, Glenn S. Bass*, for appellant.
*Robert M. Travis, J. Joel Mercer, Jr.*, for appellee.